**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JORDAN LEE HERRON,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER THOMAS SKILONGER, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:23-CV-00584<br><br>(SAPORITO, J.) |

**MEMORANDUM**

The plaintiff, Jordan Lee Herron, brings this action for the deprivation of his rights against the following defendants: (1) Officer Thomas Skilonger ("Officer Skilonger"); (2) Officer Patrick Gill ("Officer Gill"); (3) Sergeant Anthony Smith ("Sergeant Smith"); (4) Officer Joshua Rhoads ("Officer Rhoads"); (5) Forty Fort Borough ("Forty Fort"); (6) Jenkins Township; and (7) Wyoming Borough. (Doc. 48). While the plaintiff alleges numerous claims against the defendants, the current matter before the Court concerns Forty Fort's motion to dismiss the plaintiff's *Monell* claim (Count Five) against it for a failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 50). The parties have fully briefed the matter (Doc. 53; Doc. 54) and

it is ripe for review.[1]

## I. Background[2]

On December 9, 2022, the plaintiff alleges that he and two friends were sitting in a car at the VFW Post 396 in Wyoming, Pennsylvania, when Officer Skilonger entered the parking lot and pulled directly behind the vehicle. At the time, the plaintiff contends that he was sitting as the front seat passenger in the vehicle. The plaintiff avers that Officer Skilonger began engaging in conversation with the driver of the vehicle, and at some point, Office Skilonger placed the driver of the vehicle under arrest for driving under the influence of alcohol. At this point, Officer Rhoads and Officer Gill had arrived at the VFW.

The plaintiff alleges that after the driver was secured in the back of Officer Skilonger's police cruiser, the plaintiff exited the front passenger seat of the vehicle and approached the officers. After Officer Skilonger told the plaintiff to get back in his car, the plaintiff contends that Officer Rhoads shoved the plaintiff's body into the front seat of the

[1] Forty Fort has elected not to file a reply brief in response to the plaintiff's opposition brief.

[2] We have taken the facts from the plaintiff's amended complaint. (Doc. 48).

vehicle and proceeded to forcefully restrain him. He alleges that Officer Skilonger and Officer Gill joined in the violent restraint. The plaintiff avers that he was never told to put his hands behind his back or that he was under arrest at any point.

Around that time, Sergeant Smith arrived on the scene and deployed his taser against the plaintiff, immediately sending the plaintiff to the ground while writhing in pain. The plaintiff alleges that Sergeant Smith again tased him at least one more time while he was incapacitated on the ground and curled up in the fetal position. The officers subsequently handcuffed the plaintiff where he was later transported from the VFW by ambulance to the Emergency Department at Geisinger Wyoming Valley for injuries he sustained during his encounter with the officers. The plaintiff alleges that none of the defendants tried to intervene to prevent or limit any other defendant from using unreasonable force against the plaintiff despite having the opportunity to do so.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public records of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F.

Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. Discussion

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991). In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Forty Fort Borough is such a municipality subject to liability as a "person" under § 1983. *See id.* at 694; *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can only be liable under § 1983 if the alleged unconstitutional conduct either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to

governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

Courts have held that municipalities can be liable under section 1983 for the civil rights violations of its employees for official policy in the following three situations:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes. *City of St.*

*Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (some internal citations omitted). The plaintiff has asserted in this case that Forty Fort is liable pursuant to the first and third situations. Concerning the first circumstance, the plaintiff alleges that Forty Fort is liable for Officer Gill's and Sergeant Smith's conduct because the officers acted pursuant to Forty Fort's "written policies, governing the actions of its police personnel, which included, among other topics, the use of force and tasers." (Doc. 48, ¶ 103). Forty Fort has moved to dismiss the plaintiff's *Monell* claim on the basis that the plaintiff's complaint "contains no factual reference to the existence of a specific policy or custom." (Doc. 53, at 10). Concerning the third situation, the plaintiff alleges that Forty Fort is liable for Officer Gill's and Sergeant Smith's conduct because "Chief Hunsinger, the highest policymaker for Defendant Forty Fort, ratified the actions of both Officer Gill and Sergeant Smith in their use of unreasonable and excessive force against [the plaintiff] … [a]s evidenced by his approval of the Officer Gill Commendation and preparation of the Sergeant Smith Commendation." (Doc. 48, ¶¶ 112, 115). Forty Fort has moved to dismiss the plaintiff's *Monell* claim on the basis that Chief

Hunsinger cannot be a final policymaker under Pennsylvania law. (Doc. 53, at 14).

Alternatively, "[a] municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

A three-part test applies to determine if a municipality's failure-to-train amounts to "deliberate indifference" for purposes of a *Monell* claim: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an

employee will frequently cause deprivation of constitutional rights." *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 605 (M.D. Pa. 2013) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)). In this action, the plaintiff has argued that Forty Fort was deliberately indifferent to the need to train its police personnel concerning the use of unreasonable and/or excessive force, including the use of tasers. (Doc. 48, ¶¶ 109–111). Forty Fort has moved to dismiss the plaintiff's failure-to-train claim on the basis that it has failed "to show or allege *how* it was deliberately indifferent, and as such the claim is conclusory." (Doc. 53, at 12) (emphasis included).

In sum, Forty Fort has moved to dismiss the plaintiff's *Monell* claim on three grounds. First, it contends that the plaintiff has failed to identify a required specific custom or policy that gives rise to a constitutional injury. (Doc. 53, at 9). Second, Forty Fort asserts that the plaintiff has failed to identify a policymaker that ratified any of the defendants' actions at issue in this case. (*Id.*, at 15). Third, it argues that the plaintiff has failed to show deliberate indifference necessary for a failure-to-train claim. (*Id.*, at 11–13). Forty Fort therefore contends that the plaintiff has failed to sufficiently state a *Monell* claim upon which relief can be

granted. (*Id.*, at 16). In light of this background, we shall analyze each of Forty Fort's contentions individually.

### A. Failure to Identify a Specific Custom or Policy

"A municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (quoting *Monell*, 436 U.S. at 658). "An individual's conduct implements official policy or practice under several types of circumstances, including when [] the individual acted pursuant to a formal government policy…." *Id.* (quoting 42 U.S.C. § 1983). As we noted above, Forty Fort moves to dismiss the plaintiff's *Monell* claim on the basis that the plaintiff has failed to "identify a custom or policy and specify what exactly that custom or policy was" for purposes of a *Monell* claim. (Doc. 53, at 9) (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)).

However, in the context of *Monell* claims at the pleading stage, a "plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [an individual's] injuries." *Reed v. City*

*of Philadelphia*, No. CV 20-3640, 2021 WL 2529915, at *3 (E.D. Pa. June 17, 2021) (quoting *Rodriguez v. City of Philadelphia*, No. CIV.A. 14-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015)). In other words, "[p]leading standards do not require a plaintiff to recite the specific text of official policy." *Cowher v. Pike Cty. Corr. Facility*, No. 16-2259, 2018 WL 2717992, at *4 (M.D. Pa. June 6, 2018) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)). All that is required is that the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

Here, we find that the plaintiff has met this burden. The plaintiff does not simply "provide a blanket assertion of the entitlement to relief" for his *Monell* claim as the defendant argues. (Doc. 53, at 6–7) (quoting *McTernan*, 564 F.3d at 658). Instead, the plaintiff has identified a challenged policy attributed to Forty Fort that he argues directly caused his injury. *See* (*Id.*, ¶ 103) ("Defendant Forty Fort had written policies

governing the actions of its police personnel, which included, among other topics, the use of force and tasers"). This is precisely the standard that the Third Circuit has attributed to *Monell* claims. *See Losch*, 736 F.2d at 910 ("A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered."). While discovery and the progression of this case may ultimately show otherwise, we find that the plaintiff's allegations sufficiently meet the *Monell* standard at the pleading stage for his claim that his constitutional injury stemmed from an implementation of Forty Fort's official policy or practice. We will dismiss Forty Fort's motion to dismiss as to this theory of liability.

**B. Ratification of Conduct by Officer Gill and Sergeant Smith**

An individual's conduct may implement official policy or practice when "a final policy-maker renders the individual's conduct official for liability purposes … by ratifying the conduct [] after it has occurred." *Hill*, 455 F.3d at 245 (quoting 42 U.S.C. § 1983); *see also McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)) ("[A] municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate,

rendering such behavior official for liability purposes."). Here, the plaintiff has alleged that "Chief Hunsinger, the highest policymaker for Defendant Forty Fort, ratified the actions of both Officer Gill and Sergeant Smith in their use of unreasonable and excessive force against [the plaintiff] … [a]s evidenced by his approval of the Officer Gill Commendation and preparation of the Sergeant Smith Commendation." (Doc. 48, ¶¶ 112, 115). Therefore, the plaintiff argues that the approval of "the use of unreasonable and excessive force by Officer Gill and Sergeant Smith reflected the actual policies, customs, and/or practices of Defendant Forty Fort." (*Id.*, ¶ 116).

However, whether an official had final policymaking authority is a question of state law, and courts have routinely held that as a matter of Pennsylvania law, it is the mayor, rather than a borough police chief, that is considered the final policymaker for purposes of *Monell* claims. *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 n.8 (M.D. Pa. 2013); *see Dubas v. Olyphant Police Dep't*, No. 3:11-CV-1402, 2012 WL 1378694, at * 5 (M.D. Pa. Apr. 20, 2012) (finding that the borough police chief did not have final policymaking authority as a matter of Pennsylvania law); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)

("In any event, as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker."); *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 310 (3d Cir. 1981) ("Thus the Mayor of a Pennsylvania borough is its chief law enforcement officer, charged with the responsibility of supervising the manner in which the police department functions, with ample authority to control the conduct both of the chief of police and of all police officers."). For this reason, Chief Hunsinger's approval of the commendations cannot be considered an implementation of official policy because Chief Hunsinger is not a final policymaker for purposes of the plaintiff's *Monell* claim.[3] Therefore, we will grant Forty Fort's motion as to this theory of liability.

[3] The plaintiff has argued that "municipal police chiefs are plausibly final policymakers when they promulgate training materials and retain authority to evaluate and control officers' conducts." *Donahue v. Borough of Collingdale*, 714 F. Supp. 3d 504, 521 n. 24 (E.D. Pa. 2024) (citing *Andrews v. City of Philadelphia*, 95 F.2d 1469, 1481 (3d Cir. 1990)). This new standard, however, only seemingly applies to *Monell* claims that are founded in a failure to train, supervise, or discipline. We cannot find any support that it has been accepted in other *Monell* contexts. Therefore, to the extent that the plaintiff applies this standard to a claim for the ratification of conduct, we find this argument inapplicable.

### C. Failure to Train

The plaintiff seeks to impose liability against Forty Fort on the basis that it failed to adequately train its officers to prevent violations of constitutional rights, specifically against unreasonable and/or excessive force. (Doc. 48, ¶¶ 105–121). When a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of Canton, Ohio v. Harris*, 289 U.S. 378, 388 (1989)). Moreover, "'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Canton*, 489 U.S. at 391). Forty Fort has moved to dismiss the plaintiff's failure-to-train *Monell* claim on the basis that he has failed to allege or show deliberate indifference. (Doc. 53, at 12).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence

of his action." *Thomas*, 749 F.3d at 223 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 407).

"Nevertheless, the Supreme Court posited in *Canton* that in certain situations, the need for training 'can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights' even without a pattern of constitutional violations."

*Id.* (quoting *Canton*, 489 U.S. at 390 n.10). "The Court offered a hypothetical example of this 'single-incident' failure to train liability." *Id.* "Because 'city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons,' if the city arms the officers with firearms, 'the need to train officers in the constitutional limitations on the use of deadly force' is 'so obvious' that a failure to provide such training could provide a basis for single-incident municipal liability." *Id.* (quoting *Canton*, 489 U.S. at 390 n.10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223–24 (quoting *Bryan Cnty.*, 520 U.S. at 409). In light of this analysis, we turn to Forty Fort's contentions.

Forty Fort argues that the plaintiff has failed "to plead any facts to support a pattern of similar constitutional violations that could arguably place Forty Fort on notice of a practice that was giving rise to constitutional injuries." (Doc. 53, at 13). Upon review of the plaintiff's complaint, we agree with Forty Fort. The plaintiff has failed to plead any allegations of previous constitutional violations against unreasonable

and excessive force that would have placed Forty Fort on notice. But, as we noted before, a pattern of similar constitutional violations is not the only way that a plaintiff may plead deliberate indifference for a failure-to-train *Monell* claim. Deliberate indifference can be proven through a single incident when "the need for more or different training is so obvious, and the inadequacy [is] so likely to result in the violation of constitutional rights." *Canton*, 489 U.S. at 390. Here, we find that the plaintiff's allegations meet this standard.

In *Canton*, the Supreme Court stated that a failure to train officers in the constitutional limitations on the use of deadly force constituted an example of a need for training "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights" because policymakers know to a "moral certainty" that their officers will be required to arrest fleeing felons, and thus potentially use deadly force. *Canton*, 489 U.S. at 390 n.10. The plaintiff makes a similar argument in this case. He contends that a violation of an individual's constitutional rights against unreasonable or excessive force is a highly predictable consequence of Forty Fort's failure to train its officers on the "proper use of force, which includes but is not limited to, the use of force

continuum and the duty to intervene." (Doc. 48, ¶¶ 110, 111). This failure additionally includes the "unreasonable deployment" of tasers. (Doc. 54, at 12). Therefore, the plaintiff avers that a need for training was so obvious that Forty Fort's failure to train amounts to deliberate indifference for its *Monell* claim. We find this argument persuasive at this stage. Indeed, at least one other court in the Third Circuit has acknowledged that "the use of Tasers in the field is not dissimilar from *Canton*," *Geist v. Ammary*, 40 F. Supp. 3d 467, 487 (E.D. Pa. 2014), and the need for training in consideration of the use of a taser gun to subdue a person during arrest "could be 'so obvious' and 'highly predictable' such that a showing of repeated constitutional violations may be unnecessary." *Id.* Therefore, we disagree with Forty Fort that the plaintiff has failed "to show or allege how it was deliberately indifferent," (Doc. 53, at 12), as the plaintiff has sufficiently alleged that Forty Fort was deliberately indifferent to the "obvious" and "highly predictable" need to train its officers concerning the proper use of force, and particularly, the deployment of tasers. Thus, we will deny Forty Fort's motion to dismiss as to this theory of liability.

## IV. Conclusion

For the foregoing reasons, we will grant Forty Fort's motion to dismiss for failure to state a claim in part and deny it in part. We will grant Forty Fort's motion to dismiss concerning the plaintiff's claim of *Monell* liability predicated upon Chief Hunsinger's ratification of Officer Gill's and Sergeant Smith's alleged conduct. We will deny Forty Fort's motion to dismiss concerning the plaintiff's claim of *Monell* liability predicated upon a failure to train theory and Forty Fort's contention that the plaintiff failed to identify a specific custom or policy in the second amended complaint.

Dated: April 25, 2025

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge