**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JORDAN LEE HERRON, | |
| Plaintiff, | CIVIL ACTION NO. 3:23-CV-00584 |
| v. | (SAPORITO, J.) |
| OFFICER THOMAS SKILONGER, et al., | |
| Defendants. | |

# MEMORANDUM

In the early morning on December 10, 2022, the plaintiff, Jordan Lee Herron, was arrested after a confrontation with numerous police officers from various police departments. Accordingly, the plaintiff has brought this action against seven defendants[1], asserting federal claims under the Fourth Amendment, Fourteenth Amendment, and for *Monell* liability, in addition to state law claims of battery, assault, and malicious prosecution. (Doc. 48). Now before the Court are four motions for summary judgment asserted by all defendants under Rule 56 of the Federal Rules of Civil Procedure. (Doc. 81; Doc. 82; Doc. 85; Doc. 87). The

[1] Those defendants are: (1) Officer Thomas Skilonger; (2) Officer Patrick Gill; (3) Sergeant Anthony Smith; (4) Officer Joshua Rhoads; (5) Forty Fort Borough; (6) Jenkins Township; and (7) Wyoming Borough.

motions have been briefed by all parties[2] and the matter is ripe for review.

## I. Background

Although the factual record before us is comprehensive, the parties disagree over the characterization of that record. Ultimately, this action turns on the parties' competing interpretations of the same baseline set of facts. With that in mind, our review of the record reveals genuine disputes of material fact that remain unresolved between the parties. Despite their disagreements, however, the parties agree on the following material facts.

On December 9, 2022, the plaintiff arrived at VFW Post 396 in Wyoming, Pennsylvania, to socialize and drink with his friends. As the night wore on, the plaintiff and two of his friends, Collen Rios and Stacy [last name unknown], had moved to Ms. Rios's red Jeep parked in the VFW parking lot. Ms. Rios sat in the driver's seat while the plaintiff sat in the front passenger seat.

At approximately 2:20 a.m. in the morning, Officer Skilonger of the

[2] *See* (Docs. 81–99); (Doc. 101); (Doc. 106); (Doc. 109); (Docs. 114–125); (Docs. 130–136).

Wyoming Borough Police Department was patrolling the area in response to a recent increase in catalytic converter car thefts. While on patrol, the Officer observed the red Jeep parked in the VFW parking lot and decided to investigate it in light of the recent theft activity. Before approaching the vehicle, however, Officer Skilonger radioed dispatch to report a "suspicious vehicle and persons" and provided the vehicle's location.

As Officer Skilonger approached the vehicle, Ms. Rios exited and approached him to inquire about the reason for the contact. For approximately six minutes, Ms. Rios and Officer Skilonger discussed the recent increase in catalytic thefts in the area while Ms. Rios provided Officer Skilonger with her identification. During the conversation, however, Officer Skilonger detected a strong odor of alcohol emanating from Ms. Rios's breath. The interaction subsequently escalated into a verbal altercation between Ms. Rios and Officer Skilonger, who placed Ms. Rios in handcuffs and escorted her to his patrol vehicle, where she was taken into custody. At this point, Officer Rhoads of the Jenkins Township Police Department and Officer Gill of the Forty Fort Borough Police Department arrived at the scene in response to Officer Skilonger's dispatch.

The plaintiff remained seated in the front passenger seat of the vehicle during the encounter between Ms. Rios and Officer Skilonger. At some point, the plaintiff stepped out of the Jeep and approached the officers after Ms. Rios was placed in handcuffs. Officer Rhoads subsequently instructed the plaintiff to return to the vehicle. When the plaintiff refused, Officer Rhoads attempted to guide him back to the vehicle by placing two fingers on the plaintiff's chest and directing him towards the vehicle. As the plaintiff and Officer Rhoads approached the vehicle, however, a physical altercation ensued, resulting in both the plaintiff and Officer Rhoads falling to the ground. The plaintiff alleges that Officer Rhoads, without provocation, grabbed him from behind and attempted to force him into the front passenger seat, causing him to be slammed against the vehicle before both parties fell to the ground. Officer Rhoads, however, contends that the plaintiff threw him to the ground after Officer Rhoads attempted to secure the plaintiff's hands for safety. Regardless of the parties' respective characterizations of the encounter, the incident ultimately resulted in the plaintiff being subdued on the ground by Officer Rhoads, Officer Gill, and Officer Skilonger. At that point, Sergeant Smith of the Forty Fort Borough Police Department

arrived at the scene in response to Officer Skilonger's original request for assistance through dispatch.

After the altercation, Officer Rhoads and Officer Gill lifted the plaintiff from the ground by his arms. Officer Skilonger then shouted, "Somebody light him up," and five seconds later, Sergeant Smith deployed his taser, striking the plaintiff directly in the chest. In response, the plaintiff cried out in pain and fell to the ground. While the plaintiff remained on the ground recovering from being tased, approximately twenty-three seconds after the initial taser deployment, Sergeant Smith deployed his taser a second time. Following the second deployment, Officer Rhoads and Officer Gill handcuffed the plaintiff and transported him to Geisinger Wyoming Valley Emergency Department. The plaintiff was discharged a few hours later.

As we noted above, although the parties agree on the foregoing material facts, they offer differing characterizations of those events. The defendants contend that both taser deployments were necessary and reasonable to subdue the plaintiff in light of his resistant and combative behavior. The plaintiff, by contrast, contends that he remained compliant throughout the encounter and posed no reasonable threat that would

have warranted the use of a taser, much less a second deployment. Accordingly, the plaintiff brings this action against the defendants for federal claims under the Fourth Amendment, Fourteenth Amendment, and for *Monell* liability, in addition to state law claims of battery, assault, and malicious prosecution.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility

of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## III. Discussion

As mentioned above, now before the court are four motions for summary judgment brought by all defendants under Rule 56 of the Federal Rules of Civil Procedure. (Doc. 81; Doc. 82; Doc. 85; Doc. 87). We will address each claim individually.

### A. *Monell* Claims

The plaintiff brings *Monell* claims under 42 U.S.C. § 1983 against Jenkins Township, Wyoming Borough, and Forty Fort Borough. "On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991). In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and

other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Jenkins Township, Wyoming Borough, and Forty Fort Borough are such municipalities subject to liability as a "person" under § 1983. *See id.* at 694; *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can only be liable under § 1983 if the alleged unconstitutional conduct either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy,

attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

The plaintiff seeks to impose liability against the municipal defendants not for an executed policy or custom[3], but rather for their failures to adequately train their officers pursuant to their own policies to prevent violations of constitutional rights, specifically against unreasonable and/or excessive force. Notably, the plaintiff contends that each department's failure to train its officers concerning "situational awareness" components within those policies contributed directly to the harms and injuries underlying this action.[4] "A municipality may be held liable under § 1983 for failure to train, monitor, or supervise, [but] only

[3] While the plaintiff's operative complaint alleges that defendants Jenkins Township, Wyoming Borough, and Forty Fort Borough had policies, customs, or practices resulting in the plaintiff's rights under the Fourth and Fourteenth Amendments, the plaintiff has failed to identify a specific policy, custom, or practice attributable to his injuries.

[4] Upon review of the record, we note that it is unclear whether the plaintiff contends that each department failed to train its officers regarding preexisting "situational awareness" components within its use of force policies, or instead contends that such "situational awareness" components were absent from those policies and that their inclusion was necessary. However, we conclude that the former interpretation is the more reasonable reading of the plaintiff's claims, and, accordingly, we construe the claims on that basis.

where the plaintiff can 'identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.'" *Watson v. Philadelphia Hous. Auth.*, 629 F. Supp. 2d 481, 487 (E.D. Pa. 2009) (quoting *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005)); *see also Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 645 (E.D. Pa. 2011) ("While municipal liability under § 1983 originally hinged on affirmative policies, or customs, modern jurisprudence has extended it to a [municipality]'s failure to train, supervise and discipline its officers.").

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). "Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a

course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62). "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 407).

Here, Jenkins Township, Wyoming Borough, and Forty Fort Borough all move for summary judgment on similar arguments. Each argues, in some capacity, that the plaintiff's *Monell* claim concerning the departments' failures to adequately train their officers pursuant to their own policies must fail because the record evidence shows that the departments held adequate training programs for their officers and trained their officers pursuant to those policies. Upon review of the record, we will deny Jenkins Township's and Wyoming Borough's motion for summary judgment as to the plaintiff's *Monell* claims and grant Forty Fort's motion for summary judgment as to the *Monell* claim against it.

## I. Jenkins Township

Jenkins Township moves for summary judgment, arguing that the plaintiff's *Monell* claim against it must fail because the record evidence shows that it held training programs for its officers, including those sponsored by the Municipal Police Officers' Education and Training Commission ("MPOETC"). (Doc. 81-3, ¶¶ 8, 9). But here, the plaintiff's contention relies not just on Jenkins Township's failure to provide adequate training programs, but also a failure to adhere to its own training programs concerning the use of force to constitute deliberate indifference for its *Monell* claim.

There is no dispute that Jenkins Township enacted some official policies concerning the use of force in police training. As the Supreme Court has held, "'official policy' often refers to formal rules or understandings … that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). It follows that Jenkins Township enacted its use of force policies because it intended to establish fixed plans of action to be followed in situations

involving the necessity of the use of force as it understood that its officers would often encounter situations necessitating that force.[5] Therefore, it is axiomatic that a department's failure to train its officers in policies it knows to be necessary to its work and could cause harm can serve as the basis for a failure to train *Monell* claim. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[A] municipality's failure to properly train its employees and officers can create an actionable violation under § 1983."); *see also Roman v. City of Newark*, 914 F.3d 789, 800 (3d Cir. 2019) (finding that the municipality's failure to provide some training and failure to adequately provide other training per decree was enough to prove municipal liability).

Here, the plaintiff has identified evidence in the record that a reasonable factfinder could conclude that Jenkins Township was not training its officers pursuant to its official policies concerning the use of force. The plaintiff notes that while Jenkins Township's policies require

[5] Indeed, as the plaintiff notes, a section of Jenkins Township's policy states that "The Jenkins Township Police Department believes that training provides for employees who are better prepared to act decisively and correctly in a broad spectrum of situations and circumstances … training protects employees and the Department from exposure to potential civil liability." (Doc. 119, at 33).

officers to read and review its use of force policies, there was no oversight as to whether those officers read the policies, and further, there was no training on those policies. (Doc. 114, ¶ 7) (finding that Officer Rhoads "can't recall if I did" receive a copy of the Township's written policies and was not in possession of those policies); (*Id.*) ("Officer Rhoads was never trained on the policies, never tested on the polices, and never reviewed the policies with any of his superiors."). Moreover, Officer Rhoads testified that he does not remember if the Township has a use of force policy, and Robert Linskey, an elected Jenkins Township supervisor responsible for the oversight of the police department, also testified that he never saw the Township's use of force policy. (*Id.*, ¶ 8). At a minimum, based on the record, there remains a genuine dispute of material fact about whether Jenkins Township failed to train its officers pursuant to its own policies, and this dispute of facts precludes the granting of summary judgment.

But it is not enough that the plaintiff prove that Jenkins Township failed to train its officers pursuant it its own policies. *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990). A plaintiff must also prove that Jenkins Township's failure to train its officers pursuant to its own

policies was the "proximate cause" of his injuries. *See Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). A plaintiff may do so by demonstrating a "plausible nexus" or "affirmative link" between the municipality's failure to train and the specific deprivation of constitutional rights at issue. *Bielevicz*, 915 F.2d at 850; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 832 (1985) ("[T]here must be an affirmative link between the policy and the particular constitutional violation alleged"). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Id.* at 851 (citing *Black v. Stephens*, 662 F.2d 181, 190–91), *cert. denied*, 455 U.S. 1008 (1982)). Here, the plaintiff's argument is simple. The plaintiff alleges that Jenkins Township's failure to train its officers in the use of force pursuant to its own policies caused his injuries and serves as the proximate cause for the basis for his claims, including claims of excessive force against the defendant police officers. We find that a reasonable factfinder could affirm that link based upon the evidence in the record, and as such, the question of proximate causation is better left for the jury. Accordingly, summary judgment will not be granted on the plaintiff's *Monell* claim predicated upon Jenkins

Township's alleged failure to train its officers pursuant to its own programs.

## II. Wyoming Borough

Wyoming Borough moves for summary judgment on the contention that Officer Skilonger was given adequate training throughout his tenure and was continuously certified through use of force training courses provided by MPOETC. (Doc. 96, at 29–31) ("Officer Skilonger obtained Act 120 clearance before being employed by Wyoming and he met the ongoing yearly training requirements, including a use of force update). But, the plaintiff does not argue that Officer Skilonger never received any training. Indeed, he concedes that Officer Skilonger had some training. (Doc. 120, at 16) (acknowledging that "Officer Skilonger was in compliance with the Commonwealth's training requirements."). Rather, the plaintiff's contention concerns Wyoming Borough's failure to train its officers pursuant to its own use of force policies, independent of outside training. Upon the review of the record, we find that the plaintiff has identified evidence in the record that a reasonable factfinder could agree with that assertion. During his deposition, Officer Skilonger admits that he does not remember ever reading Wyoming Borough's written policies,

and further admits he could not recall the Borough training him in any way of the Borough's policies. (Doc. 118-8, at 17). As we found before with the plaintiff's *Monell* claim against Jenkins Township, it is axiomatic that a department's failure to train its officers in policies it knows to be necessary to its work and could cause harm can serve as the basis for a failure to train *Monell* claim. At a minimum, based on the record, there remains a genuine dispute of material fact about whether Wyoming Borough failed to train its officers pursuant to its own policies, and this dispute precludes the granting of summary judgment.

Moreover, for parallel reasons, we find that the plaintiff has also identified enough evidence at this stage that a reasonable factfinder could conclude that Wyoming Borough's failure to train its officers pursuant to its own policies was the "proximate cause" of his injuries. The plaintiff alleges that Wyoming Borough's failure to train its officers in the use of force pursuant to its own policies caused his injuries and serves as the proximate cause for the basis for his claims, including claims of excessive force against the defendant police officers. As we did with the plaintiff's *Monell* claim against Jenkins Township, we find that a reasonable factfinder could affirm that link based upon the evidence in

the record, and as such, the question of proximate causation is better left for the jury. Acco rdingly, summary judgment will not be granted on the plaintiff's *Monell* claim for Wyoming Borough's alleged failure to train its officers pursuant to its own programs.[6]

## III. Forty Fort Borough

As we noted above, Forty Fort Borough invokes a similar argument to that of Jenkins Township and Wyoming Borough. Forty Fort argues that the plaintiff's *Monell* claim predicated upon a failure to train must fail because the record contains evidence that its officers, and notably

[6] We note that independent of the plaintiff's *Monell* claim concerning Wyoming Borough's alleged failure to train its officers pursuant to its own policies, the plaintiff has also asserted *Monell* liability under a second theory of liability, arguing that Wyoming Borough's Commissioner of Police's alleged ratification of Officer Skilonger's allegedly unconstitutional actions constitutes implementing official policy. (Doc. 48, ¶¶ 146–150). An individual's conduct may implement official policy or practice when "a final policy-maker renders the individual's conduct official for liability purposes … by ratifying the conduct [] after it has occurred." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (quoting 42 U.S.C. § 1983). However, whether an official had final policymaking authority is a question of state law, and courts have routinely held that as a matter of Pennsylvania law, it is the mayor, rather than a borough police chief, that is considered the final policymaker for purposes of *Monell* claims. *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 n.8 (M.D. Pa. 2013). Accordingly, because the Commissioner of Police is not a final policymaker, the plaintiff's *Monell* claim predicated upon the Commissioner's ratification of alleged unlawful actions fails.

Sergeant Smith and Officer Gill, obtained use of force training through the police academy in addition to outside training through third parties. (Doc. 91, at 18). Upon review of the record, we find Forty Fort Borough's contentions to be persuasive.

Here, it is undisputed that Forty Fort had use of force policies implemented for its officers. However, unlike with Jenkins Township and Wyoming Borough, the record evidence shows that Forty Fort's officers reviewed those policies and acknowledged that review. (Doc. 118-G, at 10) ("[A policy] would, again, come through … the electronic system. We [would] get [a] notification and we would have to go in, read it and acknowledge having read and understood it"). Moreover, some of those policies had tests in which officers had to complete. (*Id.*). But there is no evidence in the record that any officers failed to review and acknowledge those policies or failed to complete the necessary tests accompanying those policies. Moreover, the plaintiff argues that his failure to train contention is supported by Sergeant Smith's testimony that he sent emails to Chief Hunsinger, raising concerns with Forty Fort's implemented policies. (Doc. 121, at 15). But Sergeant Smith testified that these emails concerned issues of verbiage, rather than adherence to

policies. (Doc. 118-G, at 9). Indeed, when asked directly about whether he ever questioned Forty Fort's use of force policies, Sergeant Smith specifically answered "Yes, verbiage, generally verbiage, not question as far as this is wrong…." (*Id.*). Accordingly, we find that a reasonable factfinder could not conclude that Forty Fort failed to train its officers pursuant to its own policies, as the plaintiff therefore has failed to identify a specific policy implemented by Forty Fort that was not followed by the Borough.

**B. Federal Claim of Malicious Prosecution**

The plaintiff brings malicious prosecution claims under 42 U.S.C. § 1983 against Officer Rhoads and Officer Skilonger. However, we need not analyze the plaintiff's federal malicious prosecution claims on the merits. The plaintiff admits in his briefs in opposition to the parties' motions for summary judgment that "the evidence of record does not support a federal claim for malicious prosecution." (Doc. 119, at 27); (Doc. 120, at 18). Therefore, the plaintiff's federal malicious prosecution claims shall be dismissed.

Nonetheless, we must briefly address one of the plaintiff's contentions concerning his malicious prosecution claim. Although the

plaintiff abandons his federal malicious prosecution claims against Officer Rhoads and Officer Skilonger, he also argues that the claims should not be dismissed because "regardless of its label, it presents a federal claim for false arrest which is supported by the record evidence." (Doc. 119, at 28); (Doc. 120, at 19). Put differently, the plaintiff attempts to recategorize his malicious prosecution claims into false arrest claims, arguing that the Court should consider these newly asserted claims on their merits. But, it is well established that "a plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013), *aff'd*, 548 F. App'x 813 (3d Cir. 2013)) (citations omitted); *Dewees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009) ("[T]o the extent Plaintiff is attempting to expand upon his original allegations through argument in his brief it is impermissible"). Therefore, to the extent that the plaintiff attempts to expand his claims to assert new theories, that contention is meritless.

**C. Federal Claim of Unreasonable and Excessive Force**

The plaintiff asserts claims of unreasonable and excessive force against Officer Rhoads, Sergeant Smith, and Officer Gill in violation of

the Fourth Amendment of the United States Constitution. To state a § 1983 claim for excessive force in violation of the Fourth Amendment, "a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003). The test of reasonableness under the Fourth Amendment is whether, under the totality of the circumstances, the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Thus, if a use of force is objectively unreasonable, an officer's good faith is irrelevant; likewise, if a use of force is objectively reasonable, any bad faith motivation on the officer's part is immaterial." *Estate of Smith*, 318 F.3d at 515. Among the factors to be considered in determining whether a seizure was reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[] or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see also Estate of Smith*, 318 F.3d at 515. Additional factors may include "the possibility that the persons subject to the police action are themselves violent or dangerous,

the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officer[] must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997); *see also Estate of Smith*, 318 F.3d at 515.

The issue of reasonableness is typically a question of fact for a jury to resolve. *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004); *Estate of Smith*, 318 F.3d at 516; *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). "In cases removing any issue of fact after the completion of discovery, summary judgment may be appropriate." *Ford v. City of Pittsburgh*, No. CIV.A. 13-1364, 2014 WL 7338758, at *3 (W.D. Pa. Dec. 22, 2014); *see also Plumhoff v. Rickard*, 572 U.S. 765, 775–77 (2014) (finding that, based on undisputed facts, police officers were entitled to summary judgment on Fourth Amendment excessive force claims). Upon review of the record, however, this action does not represent such a situation.

Concerning Officer Rhoads, it is undisputed that the plaintiff stepped out of the red Jeep and approached the officers to inquire about their confrontation with his friend, Colleen Rios. The record

demonstrates that Officer Rhoads approached the plaintiff and led him back to the Jeep before an altercation ensued and the two individuals fell to the ground, resulting in the plaintiff being tased twice. But, the plaintiff and the defendant have different perspectives of the description of the underlying events[7], and therefore, whether Officer Rhoads's actions were "objectively reasonable" considering the facts and circumstances before him is a question for the jury rather than the court. Our own review of the video evidence in the record depicting the underlying events confirms that reasonable minds could differ on whether Officer Rhoads's actions were objectively reasonable. Accordingly, at a minimum, the record demonstrates that a genuine dispute of material fact remains as to that issue preventing summary judgment.

Concerning Sergeant Smith, we also find that a genuine dispute of material fact as to the reasonableness of Sergeant Smith's actions precludes the granting of summary judgment. Sergeant Smith contends that he tased the plaintiff because the plaintiff was actively resisting arrest while being combative and defiant, presenting significant safety

---

[7] *See supra* at 3–10.

concerns to the officers. (Doc. 95, at 5). Moreover, Sergeant Smith details that the officers had concerns that the plaintiff held a concealed weapon in his pocket when he approached them. (*Id.*). The plaintiff contends that the officers had no reason to believe that he was armed, and that the record evidence shows that he was not combative with any officers in any form. (Doc. 122, at 17). Nonetheless, the plaintiff argues that Sergeant Smith deployed his taser twice, including once while the plaintiff was sobbing on the ground. (*Id.*, at 21). Because resolving the conflicting accounts requires a credibility determination, the issue is better left to the jury rather than the Court. Summary judgment is therefore inappropriate.

As to Officer Gill, we additionally find that a genuine dispute of material fact as to the reasonableness of Officer Gill's actions precludes the granting of summary judgment. Officer Gill argues that his actions in subduing the plaintiff were reasonable for largely the same reasons as those stated by Sergeant Smith. Officer Gill contends that the plaintiff was actively resisting arrest while being combative and defiant, presenting significant safety concerns to the officers. (Doc. 95, at 5). Moreover, Officer Gill details that the officers had concerns that the

plaintiff held a concealed weapon in his pocket when he approached them. (*Id.*). The plaintiff, again, contends that the officers had no reason to believe that he was armed, and that the record evidence shows that he was not combative with any officers in any form. (Doc. 122, at 17). As we found with Sergeant Smith, because resolving the conflicting accounts requires credibility determinations, the issue of whether Officer Gill's actions were reasonable is better left to the jury rather than the Court. The granting of summary judgment is therefore inappropriate.

**D. Qualified Immunity Defense: Officer Rhoads, Sergeant Smith, and Officer Gill**

Nonetheless, Officer Rhoads, Sergeant Smith, and Officer Gill have all interposed an affirmative defense of qualified immunity with respect to the plaintiff's unreasonable and excessive force claims asserted against them.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests–the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 55 U.S. at 236). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 55 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In the Third Circuit, it is the party asserting the affirmative defense of qualified immunity who bears the burden of persuasion. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Thus, the moving defendant must:

> [S]how that there was no genuine dispute of material fact to refute their contention that they did not violate [the plaintiff's] constitutional rights as he asserted them, or show that reasonable officers could not have known that their conduct constituted such a violation when they engaged in it.

*Id.* We need not analyze the first prong of the *Saucier* analysis, as we have already found that the plaintiff has supported his excessive force claim under the Fourth Amendment against Officer Rhoads, Sergeant Smith, and Officer Gill at this stage. Therefore, we move to the second prong to analyze whether that right was "clearly established" for purposes of qualified immunity.

"In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159. If the right is defined too broadly, at a high level of generality, it risks "convert[ing] the rule of qualified immunity that our cases plainly establish into a rule of virtually

unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "We are thus required to frame the right at issue in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad proposition." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (citations and internal quotation marks omitted).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citation omitted).

Concerning Officer Rhoads and Officer Gill, the plaintiff appears to argue that he had a right to be free from excessive force when he was unarmed, suspected of no serious crime, and showed no resistance towards the police officers. We note that while the Supreme Court has emphasized that "[w]e do not require a case directly on point before concluding that the law is clearly established, … existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citations and quotations omitted).

Put differently, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). Pertinent to this action, the Third Circuit has recognized that "an unarmed individual who is not suspected of a serious crime–including one who is verbally uncooperative or passively resists the police–has the right not to be subjected to physical force such as being grabbed, dragged, or taken down." *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020). The Third Circuit's recognition is applicable to this case as it reflects the circumstances at the heart of the underlying action. The unarmed plaintiff, unsuspected of a serious crime, was subjected to physical force after, at most, potentially being recognized as verbally uncooperative or passively resisting the police officer's commands. Therefore, the right at issue in this case falls within the category of "clearly established" rights to overcome the defense of qualified immunity. Accordingly, we find that Officer Rhoads and Officer Gill are not entitled to summary judgment based on qualified immunity for the plaintiff's excessive force claims against them.

Sergeant Smith asserts a defense of qualified immunity on the basis

that multiple courts have approved the use of taser guns to subdue individuals who resist arrest or refuse to comply with police orders. Here, Sergeant Smith argues that he deployed his taser against the plaintiff who he claims was being uncooperative and refusing to comply with orders. Indeed, many courts of appeals, including the Third Circuit, have agreed with this assertion. *See Brown v. Cwyar*, 484 F. App'x 676, 681 (3d Cir. 2012) (holding the use of a taser was reasonable when the plaintiff refused multiple police orders); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a taser to "effectuate [an] arrest" was reasonable when the individual was "hostile, belligerent, and uncooperative"); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (approving the use of a stun gun to overcome a suspect's resistance of arrest); *Russo v. City of Cincinnati*, 953 F.2d 1036 (holding it was reasonable to use a taser to subdue a paranoid schizophrenic who locked himself in an apartment and disobeyed police orders to open the door and drop his weapons); *United States v. Norris*, 640 F.3d 295, 303 (7th Cir. 2011) (finding the use of tasers reasonable where defendant had "displayed an unwillingness to accede to reasonable police commands, and his actions suggested an intent to use violence to fend off further

police action"). But the Third Circuit has also held that it is clearly established that it is "unlawful to use a taser on an individual who is nonviolent, compliant, and poses no threat of danger." *Randolph-Ali v. Minium*, 793 F. App'x 146, 150 (3d Cir. 2019); *see also Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012); *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009). Here, we find that there are genuine disputes of material fact as to the underlying events that preclude granting qualified immunity to Sergeant Smith at this stage due to the conflicting perspectives of whether Sergeant Smith's actions were reasonable under the circumstances.

As the Third Circuit has held, "[r]easonableness under the second factor [of the qualified immunity analysis] is an issue of law for the district court to determine; however, if there are facts material to the determination of reasonableness in dispute, then that issue of fact should be decided by the jury." *Barton v. Curtis*, 497 F.3d 331, 335 (3d Cir. 2007) (citing *Sharrar v. Felsing*, 128 F.3d 810, 826–28, 832 (3d Cir. 1997)) (citation omitted). Here, as we noted above, several facts material to the determination of the reasonableness of Sergeant Smith's actions remain in dispute, and those disputes should be resolved by a jury rather than

the court. *Geist v. Ammary*, 40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (collecting cases denying summary judgment on qualified immunity when factual disputes remain about the reasonableness of an officer's conduct). While Sergeant Smith characterizes the plaintiff as uncooperative, combative, and unwilling to follow orders, the plaintiff contends that the record evidence demonstrates otherwise: he complied with the officers' orders and posed no safety concerns. Accordingly, the jury must first resolve the disputed factual issues underlying this action before the Court can appropriately determine whether the officer is entitled to qualified immunity. Sergeant Smith's motion based on the doctrine of qualified immunity will be denied.

**E. State Law Claims of Assault and Battery**

The plaintiff brings state law claims of assault and battery against Officer Rhoads, Officer Skilonger, and Sergeant Smith. "A claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery." *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289 (1994)). As the Supreme Court of Pennsylvania has explained:

> Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed

> whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person. A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Renk*, 641 A.2d at 293 (citation and internal quotation marks omitted). However, we need not undertake a significant analysis concerning these state law claims against Officer Rhoads, Officer Skilonger, and Sergeant Smith. As we noted above concerning the plaintiff's excessive force claims against the three defendants, whether those officers used reasonable force considering the facts and circumstances before them is a determination that is better left for a jury, rather than the Court. Therefore, summary judgment is not warranted concerning these claims.

**F. State Law Claim of Malicious Prosecution**

The plaintiff brings state law claims of malicious prosecution against Officer Rhoads and Officer Skilonger. To maintain a claim for malicious prosecution under Pennsylvania law, a plaintiff must prove that (1) defendants initiated a criminal proceeding against the plaintiff; (2) without probable cause; (3) the criminal proceeding terminated

favorably to the plaintiff; and (4) defendants acted maliciously or for a purpose other than bringing justice to the plaintiff. *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 665 (W.D. Pa. 2010) (citations omitted).

Here, Officer Rhoads moves to dismiss the plaintiff's state law malicious prosecution claim on the grounds that he neither initiated nor pursued criminal charges against the plaintiff, and that his only involvement in the criminal proceedings, attending the plaintiff's hearing as a witness, does not constitute the requisite malicious intent to support a malicious prosecution claim. But the Third Circuit has held that "[i]f [] officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." *Halsey*, 750 F.3d at 197 (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09, 317 (6th Cir. 2010)). While the plaintiff concedes that Officer Rhoads did not initiate the criminal charges against him, he contends that Officer Rhoads provided Officer Skilonger a "paraphrased" version of his police report for Officer Skilonger to incorporate into his own report. (Doc. 114, ¶ 67). Moreover, the plaintiff notes that Officer Rhoads spoke to Officer Skilonger about the charges being filed against the plaintiff. (*Id.*). Accordingly, a reasonable factfinder could conclude that Officer Rhoads

influenced or participated in Officer Skilonger's decision to institute criminal proceedings against the plaintiff. Therefore, summary judgment will be denied as to this claim.

Officer Skilonger also moves for summary judgment concerning the plaintiff's state law malicious prosecution claim. Here, Officer Skilonger's motion concerns the second element of a malicious prosecution claim, contending that the undisputed facts show that he had probable cause for the initiation of public drunkenness, disorderly, conduct, and criminal mischief citations against the plaintiff. (Doc. 96, at 25, 30–37). Therefore, Officer Skilonger argues that the existence of probable cause for the issued citations is an absolute defense to the plaintiff's state law malicious prosecution claims. (*Id.*, at 46). But we find that the plaintiff's malicious prosecution claim, and thus the probable cause element, depends on a genuine dispute of material fact as to the underlying events of the action. "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy." *Basile*, 752 F. Supp. 2d at 665 (quoting *Kelley v. General Teamsters Local 249*, A.2d 940, 941 (Pa. 1988); *Fought v. City of*

*Wilkes-Barre, Pennsylvania*, 466 F. Supp. 3d 477, 507) (M.D. Pa. 2020) ("[W]hen the probable cause determination depends upon disputed issues of fact, the trial court should submit the factual disputes to the jury, and then make the probable cause determination based upon the jury's findings.") (citations and quotations omitted). Accordingly, we find the determination of whether Officer Skilonger had probable cause to initiate proceedings against the plaintiff is better left to the jury, rather than the Court. Therefore, we find that summary judgment as to this count is not warranted.

## IV. Conclusion

For the foregoing reasons, we shall grant the defendants' motions for summary judgment in part and deny them in part.

Defendant Jenkins Township's motion for summary judgment will be denied as to the plaintiff's *Monell* claim concerning a failure to train its officers pursuant to its own use of force policies.

Officer Rhoads's motion for summary judgment will be granted as to the plaintiff's federal claim for malicious prosecution, and denied as to the plaintiff's federal claim of excessive force, the plaintiff's state law claims for assault and battery, and the plaintiff's state law claim for

malicious prosecution.

Wyoming Borough's motion for summary judgment will be granted as to the plaintiff's *Monell* claim concerning Chief Mercavitch's ratification of unlawful policy and practice, and denied as to the plaintiff's *Monell* claim concerning a failure to train its officers pursuant to its own use of force policies.

Officer Skilonger's motion for summary judgment will be granted as to the plaintiff's federal claim for malicious prosecution, and denied as to the plaintiff's state law claim for malicious prosecution.

Forty Fort Borough's motion for summary judgment will be granted as to the plaintiff's *Monell* claim regarding a failure to train its officers pursuant to its own use of force policies.

Sergeant Smith's motion for summary judgment will be denied as to the plaintiff's federal claim of excessive force and the plaintiff's state law claims for assault and battery.

Officer Gill's motion for summary judgment will be denied as to the plaintiff's federal claim of excessive force and the plaintiff's state law claims for assault and battery.

An appropriate order follows.

Dated: September 29, 2026

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States District Judge